UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
AT ERIE

| | |
|---|---|
| THOMAS FRUNGILLO, ) | |
| ) | |
| *Plaintiff*, ) | Civil Action No. 16-108 |
| ) | |
| v. ) | |
| ) | ORDER GRANTING DEFENDANTS' |
| ) | MOTIONS FOR SUMMARY JUDGMENT |
| BRADFORD REGIONAL AIRPORT ) | |
| OPERATING, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |
| _____ ) | |

Plaintiff Thomas Frungillo brings this disability discrimination action alleging that various parties affiliated with his former workplace, Bradford Regional Airport, violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951. (Doc. 11.) Specifically, Plaintiff brings this action against two sets of Defendants: "County Defendants," comprised of Defendants Cameron County, Elk County, and Warren County; and "Airport Defendants," comprised of Defendants Bradford Regional Airport Authority, Bradford Regional Airport Operating, and Bradford Airport Advisory Board. Plaintiff avers that he was a "joint employee" of County Defendants and of Airport Defendants, and that his employment was wrongfully terminated shortly after—and in retaliation for—his taking FMLA leave. (*Id.* at ¶¶ 45-75, p. 9 n.4). County Defendants and Airport Defendants each move for summary judgment, arguing that neither is an "employer" subject to the requirements of the FMLA or the ADA. Specifically, County Defendants argue that Plaintiff was not their employee, and was

1

instead employed solely by Airport Defendants. (Doc. 49). Airport Defendants assert—and Plaintiff agrees—that Airport Defendants employed fewer than 15 employees, and that an employer is subject to the FMLA only if it employs 50 or more employees, 29 U.S.C. § 2611(2)(A)-(B), and is subject to the ADA only if it employs 15 or more employees, 42 U.S.C. § 12111(4)-(5)(A). Thus, Airport Defendants maintain that as Plaintiff's sole employer, they cannot be subject to FMLA or ADA liability as a matter of law. (*Id*. at 1-2, 11-14).[1] Plaintiff opposes both motions. (Pl's. Opp'n Airport Def.'s Mot., Doc. 52; Pl's. Opp'n County Def.'s Mot., Doc. 55).

Having reviewed the parties' briefs together with all relevant materials, the Court finds that County Defendants were not joint employers with Airport Defendants, and that Plaintiff was instead employed solely by Defendant Bradford Airport Authority. Thus, neither set of Defendants is subject to liability under the FMLA or the ADA as a matter of law. Accordingly, the Court grants County Defendants' motion as it relates to Plaintiff's FMLA and ADA claims, and Airport Defendants' motion as it relates to the joint employment issue, and dismisses Plaintiff's federal claims. In addition, the Court declines to exercise jurisdiction over Plaintiff's remaining PHRA claims. The Court's reasoning follows:

## I. LEGAL STANDARDS

### A. Summary Judgment Generally

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

---

[1] Additionally, or alternatively, Defendants argue that no reasonable juror could find that Defendants' actions were discriminatory, or that their non-discriminatory justification for firing Plaintiff was pretextual. (Doc. 45 at 14-30; Doc. 49 at 2 n.1). The Court need not reach Plaintiff's discrimination allegations as the Court finds that Defendants are not subject to the provisions of the FMLA or the ADA. (Doc. 45 at 14-30; Doc. 49 at 2 n.1).

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990) (citing *Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 204 (3d Cir.1987), *cert. denied,* 484 U.S. 1019 (1988)).

**B. Legal Standard for Summary Judgment for FMLA and ADA Claims**

The benefits and rights guaranteed by the FMLA and the ADA are not afforded to all employees in all workplaces. Specifically, and in relevant part, in order to be "eligible" for leave under the FMLA, an employee must be employed by an entity that employs 50 or employees. 29 U.S.C. § § 2612(a)(1), 2611(2)(A)-(B). Similarly, the ADA prohibits only those entities with 15 or more employees from discriminating against a qualified individual on the basis of disability. 42 U.S.C. § § 12111, 12112(a). In bringing claims under these Acts, plaintiff-employees may satisfy the employee threshold requirement by demonstrating that two or more independent entities served as "joint employers," and, therefore, that they should be treated as a single employer. *See* 29 C.F.R. § 825.106(b)(1) (two or more independent entities "may be joint employers under the FMLA"); *Cella v. Villanova Univ.*, 2003 WL 329147, at *7 (E.D. Pa. Feb. 12, 2003) (independent entities may be "joint employers" for the purposes of the ADA) (citing *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 117, 1124 (3d Cir. 1982).

## II. BACKGROUND

Plaintiff Thomas Frungillo was hired in 1998 to serve as Bradford Regional Airport's Airport Director. (Pl's. Dep., Doc. 53-1 at 37:16-21). As Airport Director, Plaintiff was tasked generally with running "a safe and efficient airport." (*Id*. at 38:12-25). Plaintiff remained Airport Director throughout his employment. (*Id*.).

Bradford Regional Airport is a public airport located in McKean County, Pennsylvania. (*See* Doc. 11 ¶ 13.) Since 2011, Defendant McKean County has contributed whatever funds are needed so that the Airport does not operate at a loss. (Airport Funding Agreement, Doc. 53-12 at 3). The Airport's operations are overseen by Defendant Bradford Regional Airport Authority ("the Authority"). (Authority Articles of Incorporation, Doc. 47-4). The Authority was formed and incorporated by Defendants Cameron County, Elk County, McKean County, and Warren County, in April 1967, under the Pennsylvania Municipality Authorities Act of 1945, Pa. Stat. Ann. § 301. (*Id*.). In November 1967, the City of Bradford conveyed the Airport to the Authority. (Agreement between Authority, Counties, and City of Bradford, Doc. 51-2 at 1).

The Authority operates under the control of a nine-member Board of Directors, all of whom are appointed by the McKean County Board of Commissioners. (Authority Bylaws, Doc. 47-5 at 1-2). Pursuant to the Authority's bylaws, at least one member must reside in each of the following counties: Cameron, Elk, and Warren. (*Id*.). There is no residency requirement for the Authority's remaining six Board members. (*Id*.). The Authority pays its expenses, including Plaintiff's wages,

through Defendant Bradford Regional Airport Operating, a PNC bank account. (Airport Defs.' Statement of Facts, Doc. 46 at ¶ 3).[2]

In December 2012, Plaintiff and the Authority entered into an employment agreement that documents, *inter alia*, the parties' obligations in the event that Plaintiff's employment with the Airport ends. (Doc. 51-4).

On Monday, September 1, 2014, Plaintiff began what was supposed to be a week-long vacation. (Pl's. Dep., Doc. 53-1 at 114:23-115:12). Plaintiff was scheduled to return to work on Monday, September 8, 2014. (*Id*.). On the morning of September 8, however, Plaintiff did not report to work. Instead, that afternoon, Plaintiff sent an email to the Authority's Personnel Committee,[3] informing them as follows: "I have over 20 days of vacation and need some time off for my own personal health. There are personnel and support issues which need to be discussed prior to my return. I cannot simply continue as is. If you wish to discuss the matter further please let me know a date and time." (9/8/14 Email from Plaintiff to Personnel Committee, Doc. 47-10 at 1).

Approximately 20 minutes later, one of the Personnel Committee members replied as

---

[2] It is uncontested that as a bank account, Defendant Bradford Regional Airport Operating does not have any employees. (Doc. 46 at ¶ 3; s*ee* Pl.'s Opp'n, Doc. 52 (failing to identify or otherwise address "Bradford Regional Airport Operating"); Pl.'s Statement of Facts, Doc. 52-1 (same); Pl.'s Doc. 55 (same)). Thus, Defendant Bradford Regional Airport Operating is not an "employer" under the FMLA or the ADA. *See* 29 U.S.C. § 2611(2)(A)-(B); 42 U.S.C. § 12111(4)-(5)(A). Accordingly, Defendant Operating is dismissed from this action.

[3] The record demonstrates that the Authority's human resources committee is known to the Authority as the Authority's "Personnel Committee." (*See, e.g.*, DeMott Aff., Doc. 47-28 at ¶¶ 20-23). In his counter statement of facts, Plaintiff refers to this same committee as the "Human Resources Committee." (Doc. 52-1 at ¶ 18). In his Complaint, however, Plaintiff avers that the Authority's personnel or human resources committee is actually Defendant Bradford Airport Advisory Board ("Advisory Board"). (Doc. 11 ¶ 16 (asserting that Defendant Advisory Board is "responsible for . . . handling employee-related issues within . . . Defendant Authority (much like a Human Resources office would)." (*Id*. at ¶ 16). Plaintiff, in his briefing, does not address this discrepancy. (*See generally id.*; Doc. 52 (mentioning "Bradford Airport Advisory Board" only in the introductory paragraph's listing of the "Airport Defendants"); Doc. 55 (same)). Additionally, according to Airport Defendants, "Defendant Advisory Board does not conduct business, have assets, exist as a legal entity or have employees." (Airport Defs.' Statement of Facts, Doc. 43 at ¶ 4). Plaintiff does not contest this. (*See generally* Docs. 52, 52-1, 55). Thus, to the extent that such an entity exists, the Court dismisses from this action Bradford Airport Advisory Board. *See* 29 U.S.C. § 2611(2)(A)-(B); 42 U.S.C. § 12111(4)-(5)(A).

5

follows: "I suggest you begin your vacation, relax and contemplate your future. I will get together with [the other three Personnel Committee members] this week to discuss the situation. Then, we might meet sometime next week to discuss the matter." (*Id*. at 2). Plaintiff responded that he would take "the remainder of the week as vacation and return on Monday—September 15." (*Id*.).

At the Personnel Committee's request, Plaintiff met with it that Friday, September 12, 2014. (Pl's. Dep., Doc. 53-1 at 153-54; DeMott Aff., Doc. 47-28 at ¶¶ 20-23). Following the meeting, the Committee decided that Plaintiff's employment should be terminated. (DeMott Aff., Doc. 47-28 at ¶¶ 20-23). Not having the authority to terminate Plaintiff, however, the Committee made its recommendation to the Authority's Board of Directors at the Authority's Board's previously-scheduled September 17, 2014 meeting. (*Id*. at ¶ 33). Seven of the Authority's nine Board members attended the meeting; and, having heard from the Committee, all seven voted to terminate Plaintiff's employment. (*E.g.*, *id*. at ¶¶ 32-40).[4] Plaintiff does not contest that at the time Plaintiff was terminated, the Authority employed "approximately eight to 10 individuals." (A. Dankesreiter Aff., Doc. 47-30 at ¶ 37).

In this action, Plaintiff asserts that since at least 2012, he has suffered from various disabilities recognized under the ADA and the FMLA,[5] and maintains that his September 8, 2014 email to the Authority's Personnel Committee constituted a request to take FMLA leave. By terminating his employment shortly thereafter, Plaintiff contends, Defendants interfered with his FMLA benefits and retaliated against him (Count 7). For the same reasons, Plaintiff further contends that under the ADA and the PHRA, Defendants wrongfully discriminated against him

---

[4] Plaintiff was issued two termination letters, each dated September 17, 2014. The first informs Plaintiff that his termination was effective that day, while the second letter states that his termination was effective October 17, 2014. (Compare Doc. 53-24 with Doc. 53-35); *see also* (Pl's. Employment Agreement, Doc. 51-4 ("Employer shall have the right to terminate [Plaintiff's] employment at any time upon thirty (30) days written notice[.]")).

[5] Specifically, Plaintiff asserts that he suffers from a degenerative disc disease in his back, a bulging disc in his neck, nerve damage to his arm, and severe stress. (Pl's. Dep., Doc. 53-1 at 58:10-25, 74:16-24; *see also* 8/3/2012 Medical Report, Doc. 53-18 at 4; 8/26/13 Medical Evaluation Summary; 7/14/14 Imagining Services Report, Doc. 53-21).

(Counts 1 and 2, respectively), retaliated against him (Counts 3 and 4, respectively), and failed to accommodate him by refusing to hold open his position during his FMLA leave (Counts 5 and 6, respectively).

County Defendants have moved for summary judgment, arguing that for the purposes of the FMLA and the ADA, they were not "joint employers" of Plaintiff, and, therefore, that they are not subject to liability under either Act as a matter of law. Airport Defendants have also moved for summary judgment, asserting that there was no joint employment, and, therefore, that they are not subject to liability given the agreed-upon number of employees they employed at the time Plaintiff was terminated. Thus, the determinative issue before the Court is whether the County Defendants were joint employers of Plaintiff (along with the Authority). If not, than neither group of Defendants is subject to liability under either Act.

### III. DISCUSSION

**A. Plaintiff's FMLA and ADA Claims**

As indicated above, the parties agree that Plaintiff was employed by Defendant Authority; and that Plaintiff's federal law claims can proceed only if County Defendants additionally, *i.e.*, "jointly," employed Plaintiff. (Compl., Doc. 11 at ¶¶ 45-46, 54, 61, 66; Airport Defs.' Mot., 45 at 10-12; County Defs.' Mot., Doc. 49 at 1-2; Pl's. Opp'n, Doc. 55 at 3). There is further no dispute that the "joint employer" test under the FMLA is identical to that under the ADA, and, therefore, that the analysis applies to both sets of claims. (*See* Doc. 49 at 6-7; Doc. 55 at 7); *compare Braden v. Cty. of Washington*, 2010 WL 1664895, at *6-8 (W.D. Pa. Apr. 23, 2010) (analyzing the joint employment relationship under the FMLA) *with Cella v. Villanova Univ.*, 2003 WL 329147, at *7-8 (E.D. Pa. Feb. 12, 2003), *aff'd*, 113 F.App'x 454 (3d Cir. 2004) (analyzing the joint employment relationship under the ADA) (citing *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)).

7

A "joint employment" relationship exists "where two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment[.]" *Browning-Ferris*, 691 F.2d at 1124. The factors that the Court should consider are set forth in *In re Enterterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462 (3d Cir. 2012). *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142 (2014) (noting that in 683 F.3d 462 (3d Cir. 2012), the Third Circuit enunciated the "*Enterprise* test" for joint employment). These factors consist of whether the alleged employer: (1) had the "authority to hire and fire" the employee; (2) had the "authority to promulgate work rules and assignments and to set the employee['s] conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;" (3) was involved in the employees' "day-to-day supervision, including employee discipline;" and (4) had "actual control of employee records, such as payroll, insurance, or taxes." *In re Enterprise*, 683 F.3d at 469) (citing *Browning-Ferris*, 691 F.2d at 1123). These factors must be viewed in light of "the total employment situation and the economic realities of the work relationship." *Id.* (internal quotation omitted). Thus, courts must also consider "evidence that does not fall neatly within one of the [four broad categories]." *Id*.

Here, Defendants cite a multitude of factors indicating that the Counties did not jointly employ Plaintiff along with the Authority. (*See* Doc. 49 at 10-14; Doc. 61 at 4-14). For example, Defendants assert that the Counties did not have the authority to hire or fire Plaintiff, nor any other Bradford Airport employee. (Doc. 49 at 10; *see* Pl's. Dep., Doc. 53-1 at 176:13-16, 177:3-7). Additionally, Defendants assert, Plaintiff had an Employment Agreement with the Authority that was between only two parties: Plaintiff, the "employee," and the Authority, the "employer." (Doc. 51-4). Plaintiff did not have an employment agreement with any of the Counties. (Pl's. Dep., Doc.

53-1 at 173:4-15). Pursuant to Plaintiff's Employment Agreement, Plaintiff was to "devote his whole time, energy, and attention, exclusively to the business of the Employer, and [] to carry out the duties assigned to him by Employer[.]" (*Id*. at 3). The Agreement further gave the Authority— and only the Authority—the right to terminate Plaintiff's employment upon 30 days written notice. (*Id*.).[6] Plaintiff received two termination letters from the Authority, (Docs. 53-24, 53-25), and did not receive a termination letter from any of the Counties, (Doc. 49).

As to Plaintiff's work rules, assignments, and conditions of employment, Defendants assert, for example, that only the Authority dictated what hours Plaintiff was to be at work. (Doc. 49 at 12 (citing Pl's. Dep., Doc. 53-1 at 177:25-178:10)). Plaintiff received multiple bonuses, none of which were issued by the Counties. (*Id*. at 182:21-183:1). Plaintiff's health and life insurance policies were issued and paid for the Authority alone. (*Id*. at 183:17-184:2). Additionally, Plaintiff had a work cell phone, a work credit card, and work travel expenses, all of which were reimbursed in full by the Authority. (Doc. 49 at 12-13 (citing Pl's. Dep., Doc. 53:1 at 178:11-25, 183:2-16)).

As to Plaintiff's day-to-day supervision, Plaintiff essentially set his own schedule. (Pl's. Dep., 177:21-178:4). Additionally, according to Plaintiff, all of the work completed at the Airport "flowed" either directly through Plaintiff, as Airport Director, or directly to the Authority. (*Id*. at 39:1-10). As to Plaintiff's job performance, he met infrequently with the Authority about it, and never met with any of the Counties about it. (*Id*. at 179:17-180:10).

As to Plaintiff's wages, Defendants assert that they were paid only by the Authority's PNC bank account, (Pl's. Dep. at 181:10-24), and that Plaintiff was never issued a W2 from any of the Counties, (*id*. at 182:1-13). On his income tax returns, Plaintiff listed his employer either as

---

[6] Similarly, Plaintiff understood that as Airport Director, he was not able to hire any employees without the Authority's approval; and Plaintiff never sought approval from the Counties to hire or fire employees. (Pl's. Dep., Doc. 53-1 at 176:13-16, 177:3-7).

"Bradford Regional Airport Authority" and/or as "Bradford Regional Airport Operating," the Authority's bank account. (*Id*. at 182:11-20).

In response to this evidence, Plaintiff maintains that "the Authority [a]cts directly or indirectly in the interest of the Defendant Counties in relation to the employee." (Doc. 55 at 8-11). Specifically, Plaintiff asserts, McKean County "contributes annually 100% of the funds needed to operate the Airport." (*Id*. at 8 (citing 2/17/11 Compensation Agreement, Doc. 53-12)); *see also* Pl's. Counter Statement of Facts, Doc. 52-1 at 5) ("The four counties entered into an agreement to have McKean County provide 100% of the funds needed to operate the Airport")). Thus, Plaintiff argues, at least McKean County jointly employed Plaintiff. (*See* Doc. 55 at 8-11).

Plaintiff misreads the Agreement he cites. In relevant part, the Agreement states that McKean County "shall…contribute annually 100% of the funds needed to operate the Airport *on a break-even basis*." (Doc. 53-12 at 3) (emphasis added). This provision does not mean that the Airport is funded solely by McKean County; instead, it means that McKean County will contribute whatever funds are necessary so that the Airport does not operate at a loss. In other words, the Airport receives funding from sources other than McKean County. (*See, e.g.*, Pl's. Dep., Doc. 53-1 at 39:14-18 (explaining that the Federal Government, through its "Essential Air Service program," provides the Airport "subsid[ies] to maintain commercial operations")).[7] Furthermore, McKean County's contribution is too attenuated to meet any of the *Enterprise* factors.

Plaintiff additionally asserts that "Plaintiff's supervisor," Joseph DeMott, serves both as the Authority's Chairman of the Board and as a McKean County Commissioner. Doc. 55 at 11, 12-13. DeMott, Plaintiff asserts, used his McKean County email address when communicating

---

[7] Plaintiff's incorrect interpretation of the Compensation Agreement underlies many of Plaintiff's contentions. (*See* Doc. 55 at 8-14). Plaintiff maintains, for example, that Plaintiff's "pay comes directly from McKean County as they provide all of the Airport's funding." (*Id*. at 14). For the same (incorrect) reason, Plaintiff maintains that "the Counties provided [Plaintiff] with medical and life insurance." (*Id*. at 12).

with Plaintiff about Plaintiff's employment. *Id.* at 13. Further, Plaintiff contends, Cameron, Elk and Warren Counties are "represent[ed]" on the Authority's Board by virtue of the Board's residency requirements; and all of the Board members are appointed by McKean County Commissioners. *See id.* at 11-14. Thus, Plaintiff argues, actions taken by—and the day-to-day supervision of—the Authority should be imputed to the Counties. *See id.*[8]

However, where a defendant-employer admits that its board of directors has the sole authority to hire and fire employees, board members' service both on that Board and for the corresponding County does not indicate joint employment. *See Kovaleski v. County of Lackawanna*, 2011 WL 6294497, at *6 (M.D. Pa. Dec. 15, 2011) (finding that joint employment relationship did not exist between the County and the County's Transportation System, where the Transportation System's Board members worked for both entities, and where the County could further make hiring and firing make recommendations to the Transportation System's Board, because the Board had the "ultimate[]" decision-making power).

Indeed, Plaintiff does not cite any support for his contention that DeMott's (and other Board members') actions taken on behalf of the Authority should be imputed to the Counties. (*See* Doc. 55 at 11-13). By contrast, and as described above, Defendants, have submitted ample evidence that the Counties had no influence over the work of the Authority, or, more specifically, over Plaintiff's employment. (*See also* Authority Bylaws, Doc. 47-5 at 2 ("[a]ll matters related to the property and operation of the business of the Authority shall be managed and decided by the Board of Directors"); Airport Defs.' Ans., Doc. 15 at ¶ 17 (denying that Plaintiff's employment,

---

[8] In furtherance of this argument, Plaintiff additionally maintains that Plaintiff "received McKean County's handbook and frequently used the handbook." (*Id.* at 13 (citing Pl's. Dep., Doc. 53-1 at 174:12-17, 176:23-177:2, 179:25-180:7)). The undisputed record demonstrates, however, that Plaintiff "asked for a copy of the McKean County Employee Handbook, as he said he wanted to use it as a reference to write a handbook for his employees. He did not receive the handbook as an employee of McKean County, as he was not employed by the County, and he was not covered by the employment policies of McKean County." (Roche Aff., Doc. 62-2 at ¶ 3).

and the terms thereof, "were controlled in any part by Defendant Counties"); Authority Board Members' Affs., Docs. 47-24--28 (declaring that during their time on the Authority, they never consulted with the Counties before acting, including when they voted to terminate Plaintiff); Lane Aff., Doc. 62-1 at ¶ 5 (declaring, as a McKean County Commissioner, that "[i]n authorizing funding for the [A]irport, McKean County did not impose any restrictions or qualifications for the payment, and did not seek to exercise any control over the Airport Director's [*i.e.*, Plaintiff's,] use of the funds")).

Nevertheless, Plaintiff, in his opposition, argues that the joint employer test requires a fact-intensive analysis, and, therefore, that the grant of summary judgment is inappropriate. (Doc. 55 at 5). In *Enterprise*, however, the Third Circuit found it appropriate to weigh the four factors in light of the totality of the employment relationship, to determine whether summary judgment is appropriate. *In re Enterprise*, 683 F.3d at 471 ("[W]hen a legal standard requires the balancing of multiple factors, as it does [with the joint employer determination], summary judgment may still be appropriate[.]"). Given the lack of substantiation by Plaintiff and the overwhelming proof by Defendants, after analyzing the factors set forth in *Enterprise* and considering the totality of the circumstances of Plaintiff's employment, the Court finds that Plaintiff has not created a genuine issue of material fact as to whether there was a joint employment relationship between the County Defendants and the Authority. Therefore, the Court grants Defendant Counties' motion for summary judgment as to Plaintiff's FMLA and ADA claims. *See id.* (affirming summary judgment and finding no joint employment relationship between parent and subsidiary despite companies being engaged in the same "nature of business" and having "interlocking directories" for their respective boards of directors, and despite there being certain factors that weighed in favor of a joint employment relationship); *Braden v. Cty. of Washington*, 2010 WL 1664895, at *7 (W.D. Pa.

Apr. 23, 2010) (granting summary judgment as to plaintiff's FMLA claims, and, having analyzed the facts under the four broad categories, finding no joint employer relationship despite County Court employee's assertions that the County: had been "involve[d] in payroll and benefits administration[;] presen[t] during the hiring process[;]" "provided support to court-related employees[;]" "adopted certain County policies[;] and…[had] recommended that Plaintiff be suspended, written up, and fired"); *Cella v. Villanova Univ.*, 2003 WL 329147, at *7-8 (E.D. Pa. Feb. 12, 2003), *aff'd*, 113 F.App'x 454 (3d Cir. 2004) (granting summary judgment as to plaintiff's ADA claims, and, having analyzed the facts under the four broad categories, finding no joint employer relationship where employee had been subject to a collective bargaining agreement, which governed his employment, and to which one defendant-entity was not a party). Accordingly.

As to Airport Defendants' motion, there is no dispute that at the time of Plaintiff's termination, the Authority employed fewer than 15 employees; and that acting as Plaintiff's sole employer, the Authority cannot be subject to FMLA or ADA liability as a matter of law. Thus, the Court grants Airport Defendants' motion for summary judgment. Accordingly, Plaintiff's FMLA and ADA claims are dismissed.

### B. Plaintiff's PHRA Claims

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (internal citation omitted).

Here, "the parties have not articulated specific reasons for the [C]ourt to entertain the PHRA claim[s] in the absence of a federal cause of action." *Erdman v. Nationwide Ins. Co.*, 621 F. Supp. 2d 230, 238 (M.D. Pa. 2007), *aff'd*, 582 F.3d 500 (3d Cir. 2009) (declining to exercise jurisdiction over PHRA claim after dismissing plaintiff's FMLA claim). Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's PHRA claims. *See id.*; *Carnegie-Mellon Univ.*, 484 U.S. at 350; *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

## IV. CONCLUSION

Having found that Plaintiff was employed solely by Defendant Bradford Regional Airport Authority, the Court hereby ORDERS as follows:

1. County Defendants' motion for summary judgment as to Plaintiff's FMLA and ADA claims is GRANTED;

2. Airport Defendants' motion for summary judgment as it relates to the joint employment issue under the FMLA and the ADA is GRANTED;

3. Plaintiff's FMLA and ADA claims (Counts 1, 3, 5, 7) are DISMISSED;

4. Defendants Bradford Regional Airport Operating and Bradford Airport Advisory Board are DISMISSED;

5. Plaintiff's PHRA claims (Counts 2, 4, 6) are DISMISSED WITHOUT PREJUDICE due to the Court's declination to exercise supplemental jurisdiction.

**IT IS SO ORDERED**.

DATED this 12th day of March, 2018.

*/s/ Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE